JUSTICE RICE,
specially concurring.
¶30 I concur with the Court’s decision and have signed the Opinion. In regard to Petitioners’ argument that reclassification of property in the context of § 15-7-111, MCA, refers only to changes between property classes and not to changes in agricultural use, I am persuaded by the Department’s citation to § 15-7-201, MCA (2009), which includes the following provisions:
(2) Agricultural land must be classified according to its use, which classifications include but are not limited tó irrigated use, nonirrigated use, and grazing use.
(3) Within each class, land must be subclassified by production categories. Production categories are determined from the productive capacity of the land based on yield.
¶31 I further agree with the Department’s argument that, when interpreting § 15-7-111, MCA, as a whole, subsection (2) governs changes in property value resulting from nonmarket factors such as changes in use — for example, from summer fallow to irrigated land — while subsection (3) is directed to and governs changes in value resulting from the 6-year statewide reappraisal or “revaluation” of classes three, four, and ten. By enacting HB 658 in the 2009 Session, which added subsections (3) and (4) to § 15-7-111, MCA, the *38 Legislature specifically addressed in these provisions only the increased value arising from the reappraisal process, requiring that this increase be phased in over six years at the rate of 16.66% per year. As the title to HR 658 stated, the bill was for an Act"... MITIGATING THE EFFECTS OF PROPERTY TAX REAPPRAISAL ...,” inter aha. Laws of Montana (2009), ch. 483, § 7. New subsection (3) was essentially an update of the Legislature’s previous adoption of what is now codified as subsection (5), which also provided for phase-in of the new market value established by the reappraisal process. These conclusions effectively overrule Petitioners’ objections.
¶32 One question raised by the plain language of § 15-7-111, MCA, but not answered by the Department’s analysis of the statute, is the meaning or effect of the phase-in provisions of subsection (2). Understanding, again, that subsection (2) governs the changes in value resulting from nonmarket factors such as new construction and the owner’s changes in use of the property, that provision requires the Department to “value and phase in” such changes and to “adopt rules for determining the assessed valuation and phased-in value” of such changes. The language of this directive is very general compared to the particular phase-in language within subsection (3), but nonetheless explicitly requires the Department to phase in, in some manner, the changes in value arising from nonmarket factors. The Department’s argument that “harmonization of subsections (2) and (3) of § 15-7-111, MCA, requires the Department to phase in only market changes that have occurred between the cycles” conflicts with the language of subsection (2). (Emphasis added.) This argument also conflicts with the Department’s own statutory structure argument that we adopt herein, whereby subsections (2) and (3) are applied to two different processes. The Department takes the position that it can calculate a new value based upon subsection (2) property changes “at any time” and impose that new value all at once, citing § 15-8-601, MCA (permitting reassessment of property “whenever the department discovers that any taxable property” has been erroneously assessed). Further, the Department has apparently not adopted rules to implement any kind of phase-in of subsection (2) changes, despite the statutory directive to do so. Given that this issue is not the thrust of Petitioners’ argument and is ancillary to the issues as raised, resolution of these apparent conflicts will need to wait for another day.